The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments before the Full Commission. Plaintiffs counsel waived oral argument. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and following, and in a Pre-Trial Agreement admitted into evidence as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between parties at all relevant times.
3. Travelers Insurance Company is the carrier on the risk.
4. Plaintiffs average weekly wage at the time of her alleged injury was $311.54 yielding a compensation rate of $207.70.
5. Plaintiff allegedly sustained an injury by accident on May 15, 1997.
6. The following records were stipulated into evidence
a) Medical records of Southeastern Regional Medical Center.
b) Medical records of Dr. Brenner.
c) Employment Security Commission records with attached plaintiffs Exhibit "1.
7. The issues to be resolved are:
a) Did plaintiff sustain an injury by accident arising out of and in the course and scope of her employment on May 15, 1997? and;
b) If so, to what benefits is plaintiff entitled?
 ***********
Based upon all of the competent evidence of record and the reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is a 27 year old married female, with two small children. She completed the 11th grade and ultimately earned her GED on May 22, 1997.
2. Plaintiff has been employed since her schooling as a sales clerk, computer operator, and waitress.
3. Plaintiff began her employment with defendant-employer in October 1994 as a production worker.
4. On December 13, 1995, plaintiff sustained an injury arising out of and in the scope and course of her employment with defendant-employer when she was pulling balloon boxes off a buggy. This action caused a jerking of her left arm. Plaintiff felt immediate pain which she described as sharp burning pain in the left shoulder between her chest and shoulder.
5. Plaintiff was initially treated at Southeastern Regional Medical Center for her left arm and shoulder injury. She was referred to Dr. Staley Jackson of Lumberton, for an orthopedic evaluation. Dr. Jackson treated plaintiff from December 19, 1995 through June 21, 1996, administering a conservative course of treatment. Dr. Jackson initially took plaintiff out of work for a week.
6. Plaintiffs December 13, 1995 injury was acknowledged as a compensable claim by defendant-employer. Plaintiffs medical expenses were paid by defendant-employer. Plaintiffs claim was resolved by the payment of a check to her in the amount of $500.00. No Compromise Settlement Agreement was ever submitted for Industrial Commission approval.
7. Plaintiff returned to work following her December 13, 1995 injury after missing approximately one week of work due to the injury. Plaintiffs job was then modified to that of secretarial work in the accounts receivable department.
8. In the months following plaintiffs December 13, 1995 injury, plaintiff continued to have pain in her left shoulder. However, plaintiff received no further medical treatment for her shoulder injury after June 21, 1996.
9. On May 15, 1997, plaintiff was performing the duties of a delinquent accounts clerk due to an employee absence. This position was not her regular job. In the course of looking for a file in a storage area, plaintiff picked up a box and felt immediate pain in her left arm; and, in the middle part of her upper back. Since she had not performed this job before, she did not realize the box would be as heavy as it was. This constituted "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury and "interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. Adams v. Burlington Industries,61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983) and is an injury by accident under the Workers Compensation Act.
10. As a result of the May 15, 1997, injury by accident plaintiff had pain in her left shoulder in the same location where she had experienced pain following her December 13, 1995 injury by accident and she also had pain in her back. Plaintiff continued working the rest of the day and at the end of her shift went home. She applied ice packs and heating pads to her back and shoulder.
11. The next morning, plaintiff had extreme pain and presented to Southeastern Regional Medical Centers Emergency room. Plaintiff spoke with Betty Herring while at the Emergency Room and advised her where she was.
12. On May 15, 1997, while in the break room, plaintiff reported her injury to Tammy Autry, the office manager. According to Ms. Autry, who testified at the hearing before the Deputy Commissioner, plaintiff never spoke to her on May 15 about an injury. It was Ms. Autrys recollection she did not hear about the injury until June 25, 1997.
13. At the Emergency Room on May 16, plaintiff was provided with a note excusing her from work until May 17, 1997. However, May 17 was a Saturday and not a normal workday for plaintiff. Plaintiff returned to work on May 19, 1997. She discussed her injury with Ronald Grubbs the owner of United Balloon and Floral Company, Inc.
14. A co-employee, Angie Taylor, testified that she had a conversation with plaintiff on May 19, 1997 about her back. Ms. Taylor said plaintiff told her that her back was bothering her because she injured her back in a car accident several years ago.
15. Plaintiff was unable to work on Friday May 23, 1997 because she was unable to get a babysitter. She did, however, travel to her place of employment to obtain a paycheck. At that time, she was informed that she had been terminated due to excessive absenteeism.
16. Plaintiff applied for and began receiving unemployment compensation benefits. During the course of her receiving unemployment benefits, plaintiff conducted job searches by making two employer contacts per week. Plaintiff received a total of $2,363.00 at a rate of $139.00 per week from the period August 4, 1997 through November 29, 1997.
17. On June 25, 1996, plaintiff telephoned defendant-employer requesting authorization for medical treatment with regard to her left shoulder and back. She was told to see a physician of her choice.
18. On August 19, 1997, plaintiff presented to Dr. Mark E. Brenner of the Pinehurst Surgical Clinic upon a referral from her attorney. Plaintiff complained about pain in her left shoulder and back and provided a history of suffering an injury to her shoulder on December 13, 1995, and to her back on May 15, 1997.
19. Dr. Brenner diagnosed plaintiff with sustained internal derangement of the left shoulder and a lumbar sprain. Dr. Brenner gave plaintiff a myofacial trigger point injection and prescribed a course of physical therapy. He also took x-rays of plaintiffs lower back and shoulder and an MRI scan of plaintiffs thoracic spine. All were negative.
20. Between August 19, 1997 and December 17, 1997, Dr. Brenner administered a course of conservative treatment. No medical treatment was provided by Dr. Brenner between December 17, 1992 and July 22, 1998 due to plaintiffs pregnancy.
21. Following the birth of her child on June 18, 1998, plaintiff returned to see Dr. Brenner with continued complaints of left shoulder pain and thoracic spine pain.
22. An MRI scan of the shoulder on August 5, 1998, was consistent with impingement and a supraspinatus tendinitis. Due to the chronic nature of plaintiffs complaints, coupled with lack of improvement with conservative measures, Dr. Brenner recommended a surgical approach including arthroscopic decompression of the left shoulder.
23. According to Dr. Brenner, plaintiff was capable of sedentary light duty work. On August 19, 1997, because of her compensable injuries of May 15, 1997, Dr. Brenner restricted plaintiff from repetitive pushing, pulling, squatting, kneeling and stooping and mandated avoidance of any repetitive lifting of objects greater than ten to fifteen pounds. He also restricted prolonged and sustained overhead use of upper extremities. These restrictions resulted in plaintiffs inability to earn the same or greater wages than she was earning at the time of her injury. Although she looked for work she was unable to find any given her work restrictions. She received unemployment benefits in the amount of $2,363.00.
24. Plaintiff reached the point of maximum medical improvement with regard to her back on July 6, 1998. She was given a 1% permanent partial impairment rating.
25. Plaintiff has not reached maximum medical improvement with regard to her shoulder. Dr. Brenner recommended surgery for the shoulder. If plaintiff did not proceed with surgery, she would, according to Dr. Brenner, retain a 4% permanent partial impairment of the shoulder as a result of the May 15, 1997 injury.
26. Plaintiff was given permanent restrictions in regards to her left shoulder including no repetitive overhead use of her left upper arm.
27. Due to her pregnancy, Plaintiff would have been unable to work in any capacity for approximately three weeks prior to the birth of her child and would remain unable to work approximately three months subsequent to giving birth.
28. Defendants failed to prove a case of constructive refusal to work. Some of the absences for which plaintiff was fired were caused by her compensable injuries.
 ***********
Based on the foregoing findings of fact and conclusions of law the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On May 15, 1997, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer which exacerbated or aggravated a pre-existing condition in plaintiffs shoulder which was a result of an injury sustained by plaintiff on December 13, 1995, while employed with the defendant-employer. This compensable injury also affected her back. N.C. Gen. Stat. 97-2(6).
2. Plaintiff has proved by the greater weight of the evidence that she became temporarily and totally disabled within the meaning of the workers compensation act on August 19, 1997, when Dr. Brenner placed her under a number of different work restrictions due to her compensable injuries. Although she looked for work she was unable to find any given her work restrictions. She received unemployment benefits in the amount of $2,363.00.
3. Plaintiff is entitled to continuing temporary total disability at her compensation rate of $207.70 per week from August 19, 1997, to the present, except for a three-week three-month period of time when she was unable to work because of her pregnancy. Defendants are entitled to a credit of $2,363.00 for the unemployment insurance she collected during the period she has been unable to work.
4. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her compensable injuries. This includes all related treatment to date by Dr. Brenner, since plaintiff telephoned defendant-employer requesting authorization for medical treatment and was told to see a physician of her choice. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of $207.70 per week from August 19, 1997 through the date of this Opinion and Award and continuing thereafter week to week as long as plaintiff remains temporarily totally disabled. To the extent that the compensation due plaintiff has accrued, it shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendants shall pay all past and future medical expenses incurred by plaintiff as a result of her compensable injuries of May 15, 1997, including treatment provided by Dr. Mark E. Brenner, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiffs period of disability.
3. A reasonable attorney fee of 25 percent of the compensation due plaintiff is approved for plaintiffs counsel and shall be paid as follows: defendants shall pay directly to plaintiffs counsel 25 percent of the lump sum due plaintiff under paragraph 1 of this award. Thereafter, defendants shall pay directly to plaintiffs counsel every fourth compensation check due plaintiff.
4. Defendant shall pay 8% interest to plaintiff on all amounts due plaintiff. All amounts due prior to the date of the hearing before the Deputy Commissioner shall bear interest from the date of the hearing before the Deputy Commissioner to the date paid; all other amounts shall bear interest from the date due to the date paid.
5. Defendant shall pay the costs, including to the extent not already paid, a $200.00 witness fee to Dr. Mark E. Brenner.
This 7th day of September 2000.
 S/___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/__________________ RENÉE C. RIGGSBEE COMMISSIONER